United States District Court
Southern District of Texas
**ENTERED**
February 16, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In the Matter of the Complaint of §
ENSCO Offshore Company, as Owner §
of the modu ENSCO 74 for       §   CIV. A. NO. H-09-2838
Exoneration from or Limitation §
of Liability,                  §

## OPINION AND ORDER

Pending before the Court in the above referenced exoneration from or limitation of liability action, pursuant to 46 U.S.C. § 30501, *et seq.*, civil and maritime, in which the Fifth Circuit has affirmed this Court's final judgment, including an award of taxable costs, in favor of ENSCO Offshore Company ("ENSCO") against Claimants SKS OBO & Tankers AS and Kristian Gerhard Jebsen Skipsrederi AS (collectively, "KGJS"), are the following: (1) ENSCO's bill of costs seeking $263,988.90 (#191; ENSCO's supplemental memorandum #196 (supporting invoices and information for claimed costs and additional costs for transcripts not included in the original bill); and supplement #201 (requesting $104.50 for copies at $.15 per page on appeal)); (2) KGJS's objections (#192) to amounts claimed in ENSCO's original bill of costs; (3) KGJS's objections (#197) to #196; and (4) KGJS's response (#204) to #201.

## Standard of Review

Under Federal Rule of Civil Procedure 54(d)(1), "'[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the

prevailing party.'"  *Baisden v. I'm Ready Productions, Inc.*, 793 F. Supp. 2d 970, 973 (S.D. Tex. 2011), *citing Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir.), *cert. denied*, 549 U.S. 888 (2006). Taxation under Rule 54(d) is subject to the court's discretion, but the rule "'contains a strong presumption that the prevailing party will be awarded costs.'"  *Id., citing id*.  Nevertheless courts have  held that a court must state a good reason for denying or reducing a prevailing party's request for costs.  *Id., citing id*. To determine who is the prevailing party the court must view the case as a whole;  " party need not prevail on every issue in order the be entitled to costs."  *Fogelman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991).

The court may only tax costs for items listed in 28 U.S.C. § 1920.  *Id., citing id*.  Title 28 U.S.C. § 1920 ("Taxation of Costs"), as amended in 2008, provides,

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[1];

---

[1] Although the prevailing party need not identify every xerox copy made for use in the legal proceedings, it must make some showing that "reproduction costs necessarily result for that litigation," *Fogelman,* 920 F.2d at 286.   While it need not

-2-

(5) Docket fees under section 1923 of this title; and
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under section 1828 of this title.

"[E]xpenses that are not authorized by statute must be borne by the party incurring them." *Baisden*, 793 F. Supp. 2d at 973.  The "'district court may decline to award costs listed in the statute but may not award costs omitted from the list.'"  *Id.*, *quoting Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).  When the opposing party raises objections to the costs sought, the costs seeker "bears the burden of verifying that the costs were necessarily incurred in the case rather than just spent in preparation and litigation of the case." *Baisden*, 793 F. Supp. 2d at 973, *citing Fogelman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991).

Title 28 U.S.C. § 1821, in conjunction with 28 U.S.C. § 1920(3), governs necessary expenses for witnesses who appear at deposition and or trial, including fees, travel expenses, and lodging.[2]  *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994); *Baisden*, 793 F. Supp. 2d at 979.  "28 U.S.C. § 1821(d)(2)

---

describe each item, "some information of the types or categories of documents copied and the reason for the copies must be furnished." *Kellogg Brown & Root Intern., Inc. v. Altania Commercial Mktg. Co. W.L.L.I*, Civ. A. No. H-07-2684, 2009 WL 1457632, at *6 (S.D. Tex. May 26, 2009).

[2] See pages 21-22 of this Opinion and Order.

does not . . . permit the [subsistence] award of 'actual costs,' but limits such awards to the per diem rate.'" *Baisden*, 793 F. Supp. 2d at 980, *citing United Teacher Associates Insurance Co. v. Union Labor life Insurance Co.*, 414 F.3d 558, 575 & n.12 (5th Cir. 2005).

### ENSCO's Bill of Costs (#191 and 196)

ENSCO's bill of costs, supported by an affidavit from counsel Lawrence R. Marcay, III, and supplemented by #196, requested the following:

Fees of the Clerk . . . . . . . . . . . . . . . $350.00[3]

Fees for service of summons and subpoena . . .$4,892.30[4]

Fees for printed or electronically recorded transcripts necessarily obtained for use in the case . . $62,145.89[5]

---

[3] In its response (#204) to ENSCO's supplemental bill of costs, KGJS agrees that ENSCO is entitled to recover this sum.

[4] In its response (#204), KGJS states that ENSCO should recover nothing for fees for private process service.

[5] The individual depositions and their costs are identified in Exhibit B.  This Court observes that the Fifth Circuit has ruled,

[A] deposition need not be introduced into evidence at trial in order to be "necessarily obtained for use in the case."  If, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party.  Similarly, a deposition or copy obtained for use during trial or for trial preparation, rather than for the mere convenience of counsel, may be included in taxable costs.  Whether a deposition was necessarily obtained for use in the case is a factual determination to be made by the district court.  We accord the district

Fees and disbursements for printing . . . . . $3,397.68[6]

Fees for witnesses . . . . . . . . . . . . $30,711.52[7]

Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case . . . . . . . . . . . . .$71,518.28[8]

Other costs . . . . . . . . . . . . . . . <u>$95,527.23</u>

ENSCO's Supplemental Bill of Costs . . . . . . <u>$184.50</u>[9]

**TOTAL** . . . . . . . . . . . . . . . . . **$264,173.40**[10]

Counsel's affidavit states that the additional "other costs" (listed on Exhibit E) are costs "that equity mandates be taxable in this matter," including $75,752 for the Bond for Stipulation of Value, which was recorded with the Court's Clerk, and $19,775.23 in

---

court great latitude in this determination.

*Fogelman v. ARAMCO*, 920 F.2d 278, 285-86 (5th Cir. 1991).
    In its response (#204) KGJS states that ENSCO is entitled to recover only $2,897.25 for transcript fees.

    [6]Costs for Legal Notice printed in the *Houston Chronicle* for 4 days and online for 22 days in October 2009.
    In its response, KGJS represents that ENSCO is entitled to nothing for fees and disbursements for printing.

    [7] Specified for each witness, along with lodging costs for those from outside Houston, Texas, in Exhibit D to #191 and Exhibit 1 to #196.

    [8]In #204 KGJS suggests reducing this sum to $23,839.43.

    [9]According to #204, KGJS would award nothing for the last two categories.

    [10]KGJS's suggested total award in costs in #204 is $30,811.18.

travel costs relating to attending a vessel inspection and crew depositions in Turkey and two trips to Norway to attend the 30B(6) deposition of a claimant.

### KGSJ's Objections

Because in #196 ENSCO has satisfied a number of KGSJ's objections to the absence of evidence to support its claims of cost, the Court will not address those challenges.

KGJS first objects to ENSCO's effort to recover (1) bond premiums, publishing costs and attorney travel costs; (2) fees paid to private process servers; (3) deposition costs without any showing that such depositions were necessarily obtained in preparation for this case; (4) alternatively, for excessive deposition costs beyond the claims of KGJS; (5) excessive costs for copying documents; (6) excessive witness costs associated with lodging per diems and unsupported air fare reimbursements; (7) witness costs in connection with the presence of ENSCO's corporate representative; and (8) witness costs claimed for witnesses who did not actually testify at trial.

"The great weight of authority establishes that because bond premiums are not listed in [§ 1920], they are unrecoverable as costs." *Oldendorff Carriers GmbH & Co. KG v. Grand China Shipping (Hong Kong) Co. Ltd.*, Civ. A. No. 2:12-CV-74, 2013 WL 5424956, at *2 (S.D. Tex. Sept. 26, 2013). Therefore, argues KGJS, ENSCO's claim for $75,752.00 for bond premiums paid for a "Bond for

Stipulation of Value," should not be allowed.[11]

KGJS also objects to ENSCO's request to recover $19,775.23 in "other costs" relating to travel and lodging of its attorneys for three international trips for depositions and vessel inspections, as well as to $3,397.68 for costs publishing the Legal Notice of the Limitation Action because such an expense is outside the reach of § 1920.

Similarly KGJS maintains that fees of $4,892.30 for private process servers are not recoverable under the statute "absent exceptional circumstances." *Marmillion v. Am. Int'l Ins. Co.*, 381 Fed. Appx. 421, 431 (5th Cir. 2010)(per curiam).

KGJS objects to ENSCO's request for deposition transcript costs because it has failed to show that any of the transcripts for which it seeks recovery were necessary to the case, a number of which claimed costs that were excessive, while forty-nine deposition transcripts had no bearing on the trial of KGJS's claims and KGJS did not attend them.  It argues that counsel's supporting affidavit was merely insufficient, bare support as it does not establish that the costs were necessary, or why the costs of

---

[11] ENSCO points out that in *Oldendorff*, in which defendants as prevailing parties sought to recover $95,464 in bond premiums, the bond was not mandatory, but the defendant chose to post a Special Release Bond to have the vessel released rather than remain under arrest until the Court reviewed the matter. Nevertheless this Court agrees that the *Oldendorff* court also emphasized that "the great weight of authority establishes that because bond premiums are not listed in [§ 1920], they are unrecoverable as costs." *Id.* at *2.

witnesses in Turkey and Norway were so expensive.  KGJS asserts that four of the transcripts related to the claims of four other pipeline claimants (Sea Robin Pipeline Company, LLC, Stingray Pipeline Company, LLC, Tennessee Gas Pipeline Company, and High Island Offshore System, LLC), whose claims were settled before trial and thus they were not necessarily obtained in preparation for litigation of *this* case.   Furthermore ENSCO's trial witness list does not include any of the names KGJS lists as irrelevant (Jeffrey Molinaro, Gregory Watkins, Richard Reggio, James Messman, Sean Meehan, Georgy Loy, Stuart Babin, Paul Clayton, Jerry Rau, George Vandervoort, Robert Francini, Lee Swanger, Gerhardus Koch, and Joseph Sowell) to the trial of KGJS's claims.

KGJS further objects that ENSCO has provided only a conclusory assertion that the $75,518.28 in costs for copies was necessary for this case.  Claiming 10 cents per page, ENSCO asks to recover costs for copies of approximately 755,183 pages, a sum which KGJS argues is an exorbitant amount for this case.  KGJS also complains that ENSCO made no effort to separate copying costs for KGJS's claims from those of the other four claimants.  Thus KGJS asks the Court to disallow or reduce ENSCO's excessive copying costs.

In addition, argues KGJS, ENSCO's claimed costs for witnesses, including fees and travel costs, exceed maximum per diem rates.  28 U.S.C. § 1821(d) provides in relevant part,

> A subsistence allowance for a witness shall be paid in an
> amount not to exceed the maximum per diem allowance by

> the Administrator of General Services, pursuant to
> section 5702(a) of title 5, for official travel in the
> area of attendance by employees of the Federal
> Government.

It is an abuse of discretion for a district court to award
subsistence costs for more than the per diem rate authorized by §
1828(d)(2). *United Teacher*, 414 F.3d at 575. Federal per diem
rates are maintained by the General Services Administrator at
http://www.gsa.gov.perdiem. *Baisden*, 793 F. Supp. 2d at 980 n.28.
For fiscal year 2014, the maximum lodging rate for Houston was
$118.00 per night. www.gsa.gov/portal/category/100120. Section
1821(c) establishes the standard for maximum allowable rates for
travel expenses:

> A witness who travels by common carrier shall be paid for
> the actual expenses of travel on the basis of the means
> of transportation reasonably utilized and the distance
> necessarily traveled to and from such witness's residence
> by the shortest practical route in going to and returning
> from the place of attendance. Such a witness shall
> utilize a common carrier at the most economical rate
> reasonably available. A receipt or other evidence of
> actual costs shall be furnished."

KGJS charges that ENSCO improperly claimed costs greater than the
per diem rate and did not provide a single receipt for the claimed
costs. ENSCO claims rates for thirty nights, which under the
allowable per diem is $3,540, so the court must reduce ENSCO's
requested claim of $14,227.30 to the allowable sum.

KGJS also maintains that ENSCO's claimed airfare allowances
have no evidentiary support to show they were reasonable or that
witnesses used a common carrier with the most economical rate

reasonably available.  It also failed to submit receipts or any other evidence of its actual cost beyond a spreadsheet.

Nor, insists KGJS, can ENSCO recover witness costs for its corporate representative, Julie Slocum.  Because "[w]itnesses who are corporate officers or employees are not necessarily real parties in interest,'" recovery of taxable costs for the presence of corporate representatives "depends on whether 'their interest in the litigation is no more than a natural concern for the welfare of the corporation as opposed to actual participation in the litigation to the extent they become identifiable as a party in interest.'" *Crevier-Gerukos v. Eisai, Inc.*, Civ. A. No. H-11-0434, 2014 WL 108730, at *5 (S.D. Tex. July 9, 2014), *quoting SchmitzWerke GmbH & Co. v. Rockland Indus., Inc.*, 271 F. Supp. 2d 734, 736 (D. Md. 2003), and *Electronic Specialty Co. v. Int'l Controls*, 47 F.R.D. 158, 162 (S.D.N.Y. 1969).  Corporate representative Julie Slocum's office is in Houston, she was not called to testify, and was not a participant in the litigation, but merely present out of natural concern for the welfare of ENSCO, so the Court should disallow the claimed $531.54 for her witness costs.

Lastly, citing *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1553 (5th Cir. 1984), KGJS objects to ENSCO's claim for $749.58 in costs for witnesses who did not testify at trial:  Bob Christ ($26.44); David Gaudin ($84.04); David Menzies

($77.53); Sharon Fowler, ($77.53); Steve Hopkins ($84.04), for a
total of $749.58.

### ENSCO's Supplemental Memorandum (#196) and
### the Court's Decision

Supplementing the affidavit of counsel, ENSCO provides copies
of invoices and supporting information for its claimed costs, plus
adds some costs for additional transcripts located while it
compiled and organized the invoices.

Regarding the requested $75,752 for costs in procuring the
Bond for Stipulation of Value, ENSCO points out that it was
mandatory to procure it for this case by 46 U.S.C.S. § 30511[12] of
the Limitations of Liability Act as security for payment of claims
and thus the sum should be taxed as a necessary cost. *BCPeabody
Constr. Servs. v. United States*, 117 Fed. Cl. 408, 418 (Fed. C.
2014)(holding that costs were taxable because procurement of bond
was required to proceed with the litigation).

While the Court agrees that the bond is required from a

---

[12] Section 30511(b) states,

Creation of fund.--When the action is brought, the
owner (at the owner's option) shall-

    (1) deposit with court, for the benefit of
    claimants--

        (A) an amount equal to the value of the
        owner's interest in the vessel and pending
        freight, or **approved security . . . .**

petitioner for limitation of liability,[13] that fact does not mean

---

[13]   In admiralty the words "bond" and "stipulation" are
frequently interchangeable.  W.R. Habeeb, "Taxable costs and
disbursements as including expenses for bonds incident to steps
taken in action," 90 A.L.R. 2d 448 (originally published 1963),
citing 2 Am. Jur. 2d, Admiralty § 157.
     It is clear that a bond is required for a limitation of
liability petitioner.  *See In re Lynx Production Services*, 2014
WL 1378869, at *3 (E.D. La. Apr. 8, 2014), *citing Black Diamond
S.S. Corp. v. Robert Steward & Sons*, 336 U.S. 386, 401
(1940)(stating that petitioning for limitation of liability and
posting bond are "condition precedent to obtaining a forum
concursus to adjudicate liability."); *In re Fagerlin*, No. C-08-
5225 SI, 2009 WL 393772, at *4 (N.D. Cal. Feb. 13, 2009)("[I]n an
admiralty proceeding such as this, a stipulation is all that is
needed for security--*i.e.*, not a deposit of cash or a posting of
a bond.  Moore's *Federal Practice* treatise explains:  "[A]
stipulation is generally accepted as security if backed up by
insurance covering the vessel's potential liabilities.  If there
is no insurance, or the insurance is inadequate to cover the
value of the vessel . . ., or alternatively, the amount of the
claims against the owner, then other forms of security may be
required such as a bond or cash."), *citing* 29-708 Moore's *Fed.
Prac.*--Civ. § 708; and 3 *Benedict on Admiralty* § 14, at 2-12 (7th
ed. 2008)("If the ship is still useful to [the shipowner], and he
desires to keep her in operation, he will have her appraised and
furnish the court with an approved surety company stipulation or
pay the cash value for which the ship is appraised, plus
freight.").  Regarding "Security for value and Interest," *id.*,
the *Fagerlin* court wrote, "Both the Limitation of Liability Act
and Supplemental Admiralty Rule F require a plaintiff (1) to
deposit a certain amount of security with the court *or* (2) to
transfer his interest in the vessel and pending freight to
trustee to be appointed by the court, in order to proceed with an
action for limitation of liability."  *See also In re Everglades
island Boat Tours, LLC*, No. 2:13-cv-001-FtM-UA-SPC, 2013 WL
315468, at *1 (M.D. Fla. Jan. 9, 2013)("Pursuant to the statute
[§ 30511], upon the shipowner's filing of the petition and his
tender of a bond [covering the value of the vessel and its
freight], the district court *must* enjoin all other proceedings
against the shipowner involving issues arising out of the subject
matter of the limitations action.").  *See also In re Miller
Marine Services, Inc.*, 2013 WL 5460937, 2014 A.M.C. 133, 134-35
(E.D.N.Y. Sept. 30, 2013)("As required by the Limitation Act,
Miller Marine also posted a $515,000 bond with the court, an

that the cost is taxable.  After researching the issue, the Court finds that federal courts vary in their conclusions.  Some have held that "premiums paid on bonds incident to steps taken in the action" are taxable as costs where there is a usage, custom or practice in the district permitting such taxation, and that such premiums are not taxable as costs in districts where there is no such usage, custom or practice."  W.R. Habeeb, "Taxable costs and disbursements as including expenses for bonds incident to steps taken in action," 90 A.L.R. 2d 448 (originally published 1963), *citing Kroger Grocery & Baking Co. v. Martin*, 97 F.2d 348 (6th Cir. 1938)(refusing to tax the premiums and expenses for bonds as costs because there was no established usage in the Sixth Circuit, but noting the Second Circuit has such a custom and usage), *cert. denied*, 305 U.S. 631 (1938). *But see The American Tobacco Co. v. Steamship Katingo Hadjipatera*, 115 F. Supp. 269, 269 (S.D.N.Y. 1953)("A successful petitioner for limitation of liability must stand as a part of expenses incurred for the purpose of availing itself of the Act, the expense of its *ad interim* stipulation, whether bond premium or cost of collateral.  Such expenses are not taxable as a part of the costs."), *aff'd*, 211 F.2d 666 (2d Cir. 1954), *cert. denied*, 348 U.S. 828 (1954); *Martin Marine Transp. Co.*

---

amount equal to the *Megan T. Miller's* appraised value. . . . Both Supplemental Rule F and the Act require the petitioner to post security with the court, which usually consists of a bond equal to the value of the vessel, for future distribution (if necessary) to the claimants.").

*v. Peterson*, 135 F.2d 325, 328 (2d Cir. 1943)(Petitioner must bear the cost of filing petition, stipulations for costs and value, premium for stipulations, and expense of appraisal" as these costs are not taxable), *citing The W.A. Sherman*, 167 F. 976, 977 (2d Cir. 1909)("Expenses [the petitioner] has incurred for the purpose of availing himself of the act of Congress he should stand," including stipulations for costs and value, premium for stipulations, and expense of appraisal).

In 10 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, A. Benjamin Spencer, and Adam N. Steinman, *Federal Practice & Procedure Civ.* § 2677 (3d ed. Apr. 2016 update), the authors wrote,

> A number of federal courts have supplemented the statutory provisions for the allowance of costs . . . through local rules, by customs and usage, and by the use of their equity power.  Yet even though there are these sources of judicial power to tax costs beyond those provided for in the statute, the courts have said they should be used "sparingly," or only in "exceptional circumstances."
> Federal courts often allow the taxation of trial-connected expenses when they meet the test prescribed in both subdivision (2) and subdivision (4) of Section 1920 of Title 28 for "transcripts" and "materials" that are "necessarily obtained for use in the case."  For example courts will allow the taxation of expenses for . . . bonds[14] because these costs usually are associated with items that meet the underlying statutory standard.

ENSCO bears the burden of showing that it is entitled to tax

---

[14] *Citing Newton v. Consolidated Gas Co. of New York*, 265 U.S. 78 (1924)(recognizing allowance of costs as taxable based on long usage and/or equity).

the cost of the bond against KGSJ.  Because ENSCO has not shown nor cited an authority indicating that the Fifth Circuit has a usage or custom of taxing the cost of the bond in a limitation of liability case or allowing taxation of the cost of a bond as a necessary expense to bring a limitation of liability proceeding, because it has not shown any special circumstances justifying taxation, and because the cost of a bond is not listed in § 1920, the Court in its discretion will not allow the requested amount to be taxed against KGSJ.

Nor does § 1920 include travel expenses for counsel.  *Giner v. Estate of Higgins*, 2012 WL 2397440, at *3 (W.D. Tex. Jun 22, 2012), *citing Coats*, 5 F.3d at 891.  *See also Alonso v. Union Oil Co. of Calif.*, 71 F.R.D. 523, 525 (S.D.N.Y. 1976)("Ordinarily, travel expenses of counsel in attending a deposition are not taxed as costs."), *citing Wahl v. Carrier Mfg. Co.*, 511 F.2d 209, 216 (7th Cir. 1975) and 6 J. Moore, *Federal Practice* ¶¶ 54.77[4] at 1725 and 54.77[8] at 1751 (2d ed. 1976); *Augustine v. United States*, 810 F.2d 991, 996 (10th Cir. 1987)(denying counsel's travel expenses); *Centennial Management Services, Inc. v. Axa Re Vie*, 196 F.R.D. 603, 607 (D. Kan. 2000)(travel expenses incurred by prevailing breach-of-contract plaintiff's counsel to attend deposition of defendant's overseas employees were not taxable as costs absent a showing of exceptional circumstances).

Thus the Court disallows ENSCO's request for $95,527.23

($75,752 for the Bond for Stipulation of Value and $19,7775.23 for travel expenses) for "other costs."

Regarding the charges for publishing the printed notice required by the Limitation of Liability Act, ENSCO here, too, argues that they are taxable as costs related to this litigation and notes and that the Fifth Circuit has held that generally inclusion of a variety of items outside the scope of § 1920 is within the discretion of the district court. *Hodge v. Seiler*, 558 F.2d 284 (5th Cir. 1977).

This Court notes that *Hodge* is easily distinguishable from the situation in the instant case. *Hodge* dealt with the unlawful denial to a couple of an apartment rental because of the husband's race. The husband was awarded compensatory and punitive damages by the court, but the court denied attorney's fees and the costs of transportation of the husband and wife to attend trial in Louisiana because costs for a party's travel expenses are not included in § 1920's list. The Fifth Circuit panel in *Hodge* emphasized that "'the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute.'" 558 F.2d at 287, *quoting Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235 (1964). Nevertheless in *Hodge* it found an exception because of "the strong policies which lie behind remedial civil rights legislation, and the need to ensure that those who defend their rights are not financially penalized"

-16-

and therefore "we cannot say the district court acted improperly." *Id.* In the instant suit, civil rights violations and the policies relating to them are not relevant. Thus here, too, the Court denies the request for publishing expenses as outside the scope of § 1920.

ENSCO maintains that courts routinely allow the use of private process servers for serving civil summonses and subpoenas and permit their fees to be allowed as costs in the Fifth Circuit. *Gaddis v. United States*, 381 F.3d 444, 456 (5th Cir. 2004)(*en banc*)(noting that "section 1920(1)'s phrase '[f]ees of the clerk and marshal' has been interpreted by the Ninth Circuit to include private process servers' fees as taxable costs because the service of summons and subpoenas is now done almost exclusively by private parties employed for that purpose, not the U.S. Marshal, even though there is no express provision authorizing the payment of private process servers in § 1920." *See also Katz v. State Farm Fire & Casualty Co.*, Civ. A. No. 06-4155, 2009 WL 3712588, at *2 (E.D. La. Nov. 4, 2009)("courts often allow for taxation of" private process servers, "especially when locating witnesses is cumbersome," as was the case there); *Johnson v. City of Monroe*, Civ. A. No. 06-0635, 2008 WL 695262, at *3 (W.D. La. Mar. 12, 2008)(*citing Gaddis*); and *Landry v. St. James Parish School Board*, No. Civ. A. 99-1438, 2000 WL 1741886, at *1 (E.D. La. Nov. 22, 2000)(Because in most cases a party must employ a private process

server, such fees have been allowed as costs).

This Court would point out that, contrary to the holding in *Katz,* the Fifth Circuit in *Cypress-Fairbanks I.S.D. v. Michael F. by Barry F.*, 118 F.3d 245, 257 (5th Cir. 1997), *cert. denied*, 522 U.S. 1047 (1998), held that fees for private process servers, in the absence of something exceptional about the parties or the nature of the case, are unnecessary and should be disallowed as taxable costs under § 1920. Moreover since then the Fifth Circuit has pointed out that in *Gaddis*, while it observed the Ninth Circuit's interpretation of the statute, it did not adopt that interpretation, and it reaffirmed its holding in *Cypress-Fairbanks* that "absent exceptional circumstances, the costs of a private process server are not recoverable under Section 1920." *Marmillion v. American Intern. Ins. Co.*, 381 Fed. Appx. 421, 431 (5th Cir. 2010). *In accord, Baisden*, 793 F. Supp. 2d at 974-75. Again, because this Court finds that ENSCO has not identified any exceptional circumstances, the Court agrees with KGJS and disallows the requested sum of $4,892.30 for private process service.

KGJS objects that the costs ENSCO seeks for transcripts of depositions are higher than the prices paid by KGJS. ENSCO, providing a copy of the invoices supporting the cost of each transcript along with supplemental production of evidence, explains the greater cost is due to the fact that ENSCO noticed the deposition and was charged for the original transcript, while

-18-

copies sent to other counsel are always billed at a lower rate than the original.  The Court finds this explanation to be rational and persuasive.

As for KGJS's other objections to the deposition transcripts, ENSCO provides as Exhibit 1 to #196 a supplemental accounting, which separates the transcripts into sub-groups (ENSCO witnesses, KGJS witnesses, Sea Robin Witnesses, and one Stingray witness) according to the claims and issues that each witness was used to support, with a notation regarding its projected use at trial. ENSCO's witnesses are numbers in the list 1 through 12, all of which were listed as trial witnesses on the pretrial order and were prepared and ready to testify about the set-up of ENSCO's rig on location and the search for it after it was classified as missing, so each was needed for the case and their costs are properly charged.  KGJS's witnesses, 13-34, were all identified as trial witnesses and their depositions were used to prepare for trial, although KGJS decided not to call some of them, and they were necessary to prove KGJS's damages and the drift pattern of the rig after it left station.  Thus these costs are properly taxable. Witnesses 35-50 relate to Sea Robin's portion of the claim.  Sea Robin settled just before trial, but its witnesses were necessary for the issues remaining between KGJS and ENSCO because the path that the rig followed after being knocked off its location and the actual time of sinking were critical to determining where ENSCO

should have looked for the rig and whether ENSCO's search for it was reasonable.  The Sea Robin witnesses, who were to support the position that the rig sank to the bottom of the sea floor during the story, controverted the *SATILLA's* assertion that the rig was floating for days after the storm, and the witnesses were used to identify the time that the pipelines were severed while the rig was on the bottom and to identify the damage caused by the rig on the sea floor as it moved toward its final wreck location.  In addition ENSCO's experts need this information to prepare an appropriate drift model and for ENSCO's attorney to cross examine KGJS's drift experts.  Thus they were used to prepare for trial and are properly taxed against KGJS.  The testimony of the sole Stingray expert (51) was used to during trial preparation and introduced into evidence to prove that the ENSCO 74 did not hit the Sea Robin pipeline, which was moved by the storm's forces.

The Court finds that the depositions at the time they were taken were taxable because they were reasonably expected to be and were necessarily used for the case preparation and their costs are taxable.

As for KGJS's challenge to the copy costs as excessive, ENSCO's counsel, Lawrence R. DeMarcay, verified the accuracy of the costs in his affidavit and ENSCO has supplemented the record with copies of the copy service invoices.  ENSCO represents that $22,177 of the copy costs relate to its share of the trial exhibit books

that were used during the trial; in comparison the other $49,000 in copy costs was incurred over the five years of litigation of this case (September 2, 2009 through September 30, 2014) and are reasonable in light of the duration and complexity of the case. ENSCO concedes it has no way to segregate copies made for claims by each claimant as the copies related to its document productions that were made to all parties.   The sum also includes costs of duplication of the document productions made by each claimant to circulate to ENSCO's legal and expert teams.   Thus the copies were necessary for the development of the case and are properly taxable as costs.   Although ENSCO maintains that it is entitled to recover all copying costs, should the Count decide a reduction is appropriate, ENSCO asks an award of 66.67% of the total amount in costs because there were three parties remaining in this action and KGJS should be responsible for ENSCO's and KGJS's proportionate share.

In its discretion the Court finds that ENSCO has made a good case and that an award in full of the requested $95,527.23 for copies is taxable as costs.

ENSCO maintains that its calculation of witness fees was not in excess of the set per diem rates.   Title 28 U.S.C. § 1821 ("Per diem and mileage generally; subsistence") provides in relevant part,

> (a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United Stats, or before a

-21-

United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.

(b) A witness shall be paid an attendance fee of $40 per day for each day's attendance.  A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

(c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance.  Such a witness shall utilize a common carrier at the most economical rate reasonably available.  A receipt or other evidence of actual cost shall be furnished.

(2) A travel allowance equal to the mileage allowance which the Administrator of General Services has prescribed, pursuant to section 5704 of title 5, for official travel of employees of the Federal Government shall be paid to each witness who travels by privately owned vehicle.  Computation of mileage under this paragraph shall be made on the basis of a uniformed table of distances adopted by the Administrator of General Services. . . .

(d)(1) A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.

(2) A subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5701(a) of title 5, for official travel in the area of attendance by employees of the Federal Government.

The GSA states that the per diem meal and incidental expense rate

for Harris County is $71 per day

(http://www.gsa.gov/portal/category/100120), while the spreadsheet attached to ENSCO's Bill of Costs estimated a $25 per day rate of subsistence for each witness for each day of attendance, substantially lower than the GSA set amount.  Thus in its updated supplemental spreadsheet, attached as Exhibit 1 to #196, ENSCO seeks $30,711.52 in costs for witness fees.

KGJS objects to the taxing of $531.54 in costs incurred by witness Julie Slocum's attendance at the trial as ENSCO's corporate representative.  ENSCO responds that she was also listed as a witness in the pretrial order (#163 at p. 43) and was expected to testify in ENSCO's case in chief.

KGJS further challenges costs associated with third party witnesses not called during the trial, included David Gaudin, David Menzies, Steve Hopkins, and Bob Christ.  When these individuals were served with trial subpoenas, they were ready to testify to the location of the rig and where it was located before the storm, the drilling history and soil conditions of that location, and the rig's set-up.  Only after they were served with trial subpoenas did KGJS stipulate that the rig was set up on location properly, making their testimony unnecessary and they were released.  Thus the costs of compelling their attendance at trial should be recoverable.

ENSCO further reveals that Bob Christ was President of SeaTrepid, which performed the ROV video of the wrecked rig, and was listed as a witness for ENSCO in the pretrial order (#163 at p.

43), while his video was entered into evidence.  His information
served to validate the drift model that generated the drift pattern
of the rig and how it related to ENSCO's search for the rig.  He
was ready and available for trial.  The costs requested for his
attendance were for witness fee and mileage when he was served with
a trial subpoena, so the requested sum of $472.44 associated with
his attendance at trial is valid and taxable as costs.  A check for
the costs associated with the witness fee and mileage was attached
to the subpoena, and the costs were incurred before the parties
agreed his testimony would not be needed.

Although KGJS relies on *Nissho-Iwai Co. v. Occidental Crude
Sales, Inc.,* 729 F.2d 1530 (5th Cir. 1984) to support its argument
that these witnesses' costs should not be allowed, ENSCO claims
that KGJS misreads the case.  The Fifth Circuit panel in *Nissho-
Iwai* permitted taxing of costs for the attendance of witnesses that
were  called to testify, but did not have to because of extrinsic
circumstances.  *Id.* at 1553 ("Although courts do not ordinarily
allow fees for witnesses who have not testified at trial, a court
may award such a fee if the witness was ready to testify but
extrinsic circumstances rendered his testimony unnecessary.").  In
this case the extrinsic circumstances were KGJS's late decision to
stipulate to the seaworthiness of the rig and its proper set up.
In addition, the Court's granting of ENSCO's motion for a directed
verdict after KGJS finished its case-in-chief resolved the entire

-24-

case before ENSCO called any of the witnesses it intended to call during its case in chief.[15]

The Court is in full agreement with ENSCO's legal authority on the taxing of these costs for witnesses. ENSCO's request is supported by counsel's affidavit and by the updated GSA expense rate for Harris County. The case was won on a Judgment on Partial Findings after the Court directed a verdict. That result does not alter the fact that Julie Slocum was in attendance at trial and ready to testify as a witness had the case not been resolved when it was. Thus her costs for attendance are as taxable as are those of other ENSCO witnesses present and ready to testify. For all these reasons Court allows the full amount requested for witness fees.

## Order

Accordingly the Court, in its discretion,

ORDERS KGJS to pay the following in costs to ENSCO:

(1) Undisputed $350.00 for fees for the Clerk;

---

[15] This Court observes that a number of district courts in the Fifth Circuit have relied on *Nissho-Iwai* for this point: *see, e.g., Mississippi Chemical Corp. v. Dresser-Rand Co.*, No. 5:97CV57BRN, 2000 WL 33725123, at *15 (S.D. Miss. Sept. 12, 2000)("It is settled in this Circuit that witness fees are taxable for the days that a witness did not testify, if the witness was in necessary attendance at the trial, ready to testify."); *Card v. State Farm Fire and Casualty Co.*, 126 F.R.D. 658, 660-61 (N.D. Miss. 1989)(quoting *Nissho-Iwai*); *Gros v. City of Grand Prairie*, No. Civ. 3:96-CV-2897-D, 2001 WL 276899, at *3 (N.D. Tex. Mar. 19, 2001)("[F]ees may be awarded if the witness was ready to testify and extrinsic circumstances rendered her testimony unnecessary.").

(2) $62,145.89 for fees for deposition transcripts necessarily obtained for use in the case;

(3) $71,518.28 for exemplification and costs of making copies of materials necessarily obtained for use in this case; and

(4) $30,711.52 for fees for witnesses, for a total sum of $164,725.69.

**SIGNED** at Houston, Texas, this 16th day of February, 2017.

_____

MELINDA HARMON
UNITED STATES DISTRICT JUDGE